1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENA FAYE PEREZ,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>              Defendant. | )  1:10cv0944 AWI DLB<br>)<br>)<br>)  FINDINGS AND RECOMMENDATION<br>)  REGARDING PLAINTIFF'S<br>)  SOCIAL SECURITY COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## BACKGROUND

Plaintiff Rena Faye Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for Findings and Recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on May 16, 2006, alleging disability since May 14, 2006, due to mental problems and asthma.  AR 75-80, 92-98.  After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

("ALJ"). AR 39, 40, 53. ALJ Sandra K. Rogers held a hearing on May 7, 2008, and issued a decision denying benefits on September 28, 2008. AR 11-21, 22-38. The Appeals Council denied review on March 26, 2010. AR 2-4.

<u>Hearing Testimony</u>

ALJ Rogers held a hearing on May 7, 2008, in Stockton, California. Plaintiff appeared with her attorney, Sengthiene Bosavanh. Vocational expert ("VE") Stephen Schmidt also appeared and testified. AR 22.

Plaintiff testified that she was 27 years old at the time of the hearing. She was not married, though her boyfriend was getting ready to move in. Plaintiff was 5 feet, 6 inches tall and weighed 240 pounds. AR 25. She sometimes drives when her car works, no more than 10 miles a week. Plaintiff used to drive more but she hardly goes anywhere now unless she has to. AR 26.

Plaintiff explained that she has panic attacks and can't leave the house, so she tries to have everyone else do things for her. AR 26. When an attack comes on, her breathing gets really fast and she wants to cry. She stated that she was trying not to have an attack "right now." Plaintiff sleeps a lot because a lot of things stress her out and she tries to relax. AR 26-27. She estimated that she sleeps 12 to 15 hours day. As examples of things that stress her out, she explained that her son has ADHD and she can't take it when he fights with her youngest son. She has to have someone come pick up the kids so that she can try and relax. She also couldn't go to a dentist appointment because it was a really bad day and she couldn't get out of bed. AR 27. During the week, Plaintiff estimated that she has one or two good days and on those days, she tries to get stuff done. Her dad will take her out to handle business or things that she couldn't take care of before. She tries to get as much done as possible because she doesn't know when she'll have another good day. AR 27-28.

Plaintiff has to leave the house everyday to pick up her son from school, which is a block away. She also sometimes goes to the store across the street for cigarettes but does not socialize or have any friends. AR 28. Plaintiff tries to schedule her doctor's appointments every other month so that she doesn't "freak out" about events coming up together. AR 28. She was

supposed to see the psychiatrist once a month but never went back because she can't keep regular appointments.  AR 29.

Plaintiff also has crying attacks at least once day.  She had a 30 minute crying attack before coming to the hearing because she knew it was a big deal and she had to go a long way from home without her boyfriend.  AR 31.  She didn't want to take her medication because she knew it would knock her out.  AR 30.

Plaintiff testified that she also has depression, bipolar disorder and generalized anxiety. She takes medication to stabilize her mood swings and thinks her medications help her "as much as any medication could."  Despite the medication, she continues to have symptoms.  AR 32. Plaintiff has asthma, but since she doesn't do very much, it's okay.  AR 33.  She has no other physical problems.  AR 33.

Plaintiff last worked 8 or 9 years ago as a janitor.  She testified that she couldn't do the job and she only lasted 2 weeks because of crying spells.  She didn't go back because she couldn't take it anymore.  AR 33.  Plaintiff has had no other jobs.  She has her GED and went to trade school for computer graphics and photography.  AR 33.  She explained that she could not work because her panic attacks would prevent her from going to work everyday.  AR 34.

Plaintiff has two children and takes care of them, though her boyfriend helps her most days.  AR 34.  Her parents also help her three or four times a week.  Her boyfriend cleans up and does the chores.  AR 35.

For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience who would need a job involving only simple, repetitive tasks with no public contact and as little interaction with other employees and supervisors as possible.  AR 35.  The VE testified that this person could perform the positions of hand packer, machine operator and laundry worker.  AR 35.

Plaintiff's attorney asked the VE whether someone with a poor ability to cope with daily work pressures could work, and the VE responded that this person could not work.  AR 36.  If this person could only leave the house two days of the week, there would not be any work available.  AR 37.

1    Medical Record

2          On May 11, 2006, Plaintiff saw Alfonso Hernandez, LCSW, for a mental health

3    assessment.  Plaintiff reported significant childhood issues including physical abuse by her

4    father.  She also reported extreme domestic violence in her relationship with her ex-husband.

5    Plaintiff had a history of methamphetamine abuse from age 15 to 23.  On a separate

6    questionnaire, Plaintiff indicated that she had every symptom of bipolar disorder.  Mr. Hernandez

7    diagnosed a history of bipolar disorder, mixed and post-traumatic stress disorder.  He

8    recommended individual therapy and Seroquel.  AR 167-168.

9          Also on May 11, 2006, Plaintiff saw Nurse Practitioner Sheila Hernandez-Lee at Golden

10   Valley Health Centers and complained of a history of bipolar disorder and post-traumatic stress

11   disorder.  Plaintiff requested medication and was prescribed Seroquel.  AR 139.

12         After a visit on May 19, 2006, Nurse Practitioner Hernandez-Lee indicated that Plaintiff

13   had bipolar disorder and instructed her to continue her medications.  AR 138.

14         On August 2, 2006, Plaintiff saw S.K. Madireddi, M.D., for a consultive examination.

15   She complained of bipolar disorder and asthma, though she indicated her asthma was under

16   control.  She reported that she takes care of her children and has not worked for some time

17   because of past drug problems.  She also stated that working was difficult because it makes her

18   very depressed, it makes her cry and she had difficulty standing too long.  Plaintiff was 5 feet, 6

19   inches tall and weighed 244 pounds.  Plaintiff was overweight with full range of motion in all

20   extremities.  Motor strength was 5 out of 5 in all extremities and there were no sensory deficits.

21   Dr. Madireddi diagnosed morbid obesity, history of bipolar disorder and asthma, in remission.

22   He saw no basis for imposing any restrictions on physical grounds.  AR 142-143.

23         On August 3, 2006, Plaintiff saw J.M. Azevedo, Ph.D., for a psychological evaluation.

24   She complained of bipolar disorder and anxiety.  Plaintiff reported that she was diagnosed with

25   bipolar disorder by a psychiatrist about three months ago based on a long history of mood

26   swings, anxiousness, restlessness and high energy levels.  Currently, she described her depression

27   as mild and her anxiety as severe.  Plaintiff reported that she did her own cleaning, usually cooks

28   and occasionally goes shopping.  Plaintiff was not presently attending therapy for emotional

4

1   problems, but she previously saw a psychiatrist at the Corner of Hope and had some brief

2   battered women's counseling after a spousal assault.  She also attended an inpatient drug

3   rehabilitation program for nearly a year in 2004 and was hospitalized for psychiatric treatment for

4   three days in 2003 secondary to a drug overdose.  Plaintiff worked for a week or two in 2000 but

5   left the job because she missed her kids and was on drugs at the time.  Plaintiff has been

6   incarcerated numerous times.  She was taking Carbatrol, Paroxetine, a nasal spray, Albuterol and

7   Advair.  AR 144-145.

8        Plaintiff was somewhat dramatic during the examination but put forth good effort on

9   testing.  Plaintiff's mood was mostly anxious, exhibiting some restlessness throughout the

10  examination.  Her affect was consistent to thought content with a full range of emotional

11  expression.  Plaintiff's speech was rapid but not significantly impaired.  There were no signs of

12  any formal thought disturbance and she did not appear to be responding to any internal stimuli.

13  Insight and judgment were somewhat limited and her concentration levels were mildly impaired.

14   AR 146.

15        Dr. Azevedo concluded that Plaintiff's reported history and symptoms did not support a

16  diagnosis of bipolar disorder.  Rather, Plaintiff's symptoms reflected anxiety and chronic

17  characterological patterns.  Plaintiff's IQ scores were in the average to low-average range and her

18  score on another test was "suggestive of malingering psychopathy."  Dr. Azevedo explained that

19  the hallucinations endorsed on the test were not acknowledged when the symptom domain was

20  addressed during the interview, although hallucinations are mentioned in the medical record.

21  Plaintiff's symptom endorsements were "dramatic in nature, consistent with possible extreme

22  symptomology reporting."  "This may reflect a cry for help or an exaggeration of real, but less

23  prominent, pathology."  AR 148.

24        He diagnosed generalized anxiety disorder, depressive disorder, not otherwise specified,

25  methamphetamine dependence, in reported remission, history of alcohol and marijuana abuse, in

26  reported remission, and rule out malingering.  He opined that Plaintiff retained the general

27  cognitive abilities to understand, remember and carry out one and two step instructions of mild to

28  moderate levels of complexity and to make judgments on simple work-related decisions.  Her

history of poor judgments, however, may indicate that this is an area of inconsistency.  Plaintiff's

anxiety, limited frustration tolerance and poor coping skills may reduce her ability to manage

work pressures.  She had mild limitations in her abilities to maintain concentration, persistence

and pace throughout the course of a typical workday and/or workweek.  Plaintiff's anxiety and

characterological factors may present barriers against her efficiency in interactions with

supervisors, co-workers and the general public.  She does not appear to have any psychological

restrictions in managing activities of daily living.  AR 148-149.

On September 15, 2006, State Agency physician E.B. Aquino-Caro, M.D., completed a

Psychiatric Review Technique Form and opined that Plaintiff's mental impairment was not

severe.  Dr. Aquino-Caro noted that Plaintiff's mental status was intact, she had an average IQ

and she was independent with activities of daily living.  She also noted that Plaintiff's test score

indicated that she was exaggerating her symptoms.  AR 150-160.

Plaintiff returned to Golden Valley Health Centers on November 14, 2006, and was

assessed by Mr. Hernandez.  Her mood and affect were appropriate.  Plaintiff reported that she

was doing well, and that her energy and sleeping were good.  Her moods were stable and she was

doing better at home and in public.  She reported being a little anxious, but functioning.  Plaintiff

was able to express her feelings about past issues.  Mr. Hernandez diagnosed Plaintiff with

bipolar disorder, mixed and post-traumatic stress disorder.  He suggested individual therapy.  AR

166.

On February 26, 2007, State Agency physician G. Ikawa, M.D., reviewed a case analysis

and agreed with the September 15, 2006, finding that Plaintiff's mental impairment was not

severe.  AR 169-170.

On November 5, 2007, Plaintiff was seen at Golden Valley Health Centers and requested

x-ray and laboratory results.  She reported that she was feeling well, with no problems, but she

appeared nervous and anxious.  Her back x-rays were negative, though laboratory tests showed

hypertriglyceridmia for which she refused medication.  Plaintiff was instructed on her diet.  AR

188, 194.

1    Plaintiff saw Natalie Mattos, P.A., at Golden Valley Health Centers on January 2, 2008,

2   for follow-up after an emergency room visit for an acute panic attack.  Plaintiff reported that she

3   felt closed in and agitated.  She had no delusions or hallucinations.  Plaintiff was instructed to

4   continue Carbatrol and Paxil and was given Benadryl, Haldol and Ativan.  She was also referred

5   for a psychiatric consultation.  AR 186.

6    Plaintiff called Golden Valley Health Centers on January 7, 2008, and requested new

7   medication.  She was instructed to discontinue Klonopin and start Buspar.  AR 183.

8    Plaintiff was seen at Golden Valley Health Centers on January 9, 2008.  The progress

9   note is difficult to read, though a diagnosis of depression and panic disorder is apparent.  A GAF

10  of 75 was assessed.  AR 182.

11   On March 19, 2008, Plaintiff saw Ms. Mattos and complained of ongoing back and neck

12  pain and depression with bouts of sadness.  Plaintiff was taking Carbatrol, Paxil and Klonopin.

13  She was diagnosed with depression and post-traumatic stress disorder and instructed to continue

14  Klonopin and Paxil and begin Prozac.  She was also prescribed Ultram for neck pain.  AR 178.

15   Plaintiff saw Arundhathi D. Halappa, M.D., at Golden Valley Health Centers on April 18,

16  2008.  AR 176.  She complained of back and neck pain and requested medication refills.  She

17  also complained of a history of severe panic attacks and crying spells.  Plaintiff was taking Paxil

18  and began Prozac a month ago, which she reported was helping.  She was also taking a

19  medication for bipolar disorder.  Plaintiff reported that Tramadol was not helping her back pain

20  at all.  Dr. Halappa diagnosed bipolar disorder and instructed Plaintiff to wean off Paxil and

21  increase her Prozac dosage.  She also diagnosed low back pain and instructed Plaintiff to wean

22  off Tramadol and begin Naprosyn.  AR 176.

23   On May 9, 2008, Dr. Halappa competed a questionnaire.  She listed her clinical findings

24  as "irritable, lack of focus, decreased attention span, physical- obesity."  Plaintiff's diagnoses

25  were bipolar disorder, panic attacks, depression, post-traumatic stress disorder, obesity and

26  metabolic syndrome.  Plaintiff was taking an antidepressant, anti-anxiety medication and a mood

27  stabilizer.  Despite the medication, she still has panic attacks and irritability.  Her medications

28  were being adjusted "now."  Dr. Halappa listed her prognosis as fair.  AR 195.

1	Also on May 9, 2008, Dr. Halappa completed a Medical Assessment and opined that

2	Plaintiff had a poor ability to follow work instructions, relate to co-workers, use judgment,

3	function independently and maintain attention/concentration.  She had no ability to deal with the

4	public, interact with supervisors or deal with work stress.  In support, she noted that Plaintiff

5	cannot deal with stress at home and gets help from her parents, cries a lot, breaks down, is

6	unpredictable and has panic attacks.  Dr. Halappa further opined that Plaintiff had no ability to

7	understand, remember and carry out simple, detailed or complex job instructions based on her

8	inability to follow instructions, and poor attention, concentration and memory.  She noted that

9	Plaintiff sustained a job for only two weeks in the past.  Dr. Halappa opined that Plaintiff had a

10	fair ability to maintain her personal appearance, poor ability to behave in an emotionally stable

11	manner and no ability to relate predicably in social situations or demonstrate reliability.  These

12	limitations were based on Plaintiff's statement that she sometimes does not show up for

13	appointments because of panic attacks or her inability to handle emotions.  AR 196-199.

14	In a Medical Source Statement also dated May 9, 2008, Dr. Halappa opined that

15	Plaintiff's ability to relate and interact with supervisors and coworkers was extremely limited, as

16	was her ability to understand, remember and carry out detailed instructions.  She had marked

17	limitations in understanding, remembering and carrying out simple instructions, dealing with the

18	public, maintaining concentration and attention for at least two hour increments and withstanding

19	stress and pressure associated with working.  Her ability to handle funds was moderately limited.

20	The expected duration of these limitations was unknown and her prognosis was fair.  AR 199.

21	Dr. Halappa did not believe that Plaintiff could work because of her panic disorder and

22	depression.  This opinion was based on previous medical records and an objective examination.

23	AR 200.

24	<u>ALJ's Findings</u>

25	The ALJ determined that Plaintiff's depression was a severe impairment.  AR 16.  She

26	retained the residual functional capacity ("RFC") to perform a full range of work at all exertional

27	levels but with a limitation to simple, repetitive tasks, no public contact and as little interaction

28

1   with other employees and supervisors as possible.  AR 17.  Plaintiff did not have any past

2   relevant work but could perform a significant number of jobs in the national economy.  AR 20.

3   **SCOPE OF REVIEW**

4        Congress has provided a limited scope of judicial review of the Commissioner's decision

5   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6   the Court must determine whether the decision of the Commissioner is supported by substantial

7   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

8   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

9   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

11   401.  The record as a whole must be considered, weighing both the evidence that supports and

12   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

13   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

14   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

15   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

16   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

17   substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

18   Cir. 1987).

19   **REVIEW**

20        In order to qualify for benefits, a claimant must establish that he is unable to engage in

21   substantial gainful activity due to a medically determinable physical or mental impairment which

22   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

23   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

24   such severity that he is not only unable to do her previous work, but cannot, considering his age,

25   education, and work experience, engage in any other kind of substantial gainful work which

26   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

28   Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2  regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

3  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

4  that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her

5  disability; (2) has an impairment or a combination of impairments that is considered "severe"

6  (depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not

7  have an impairment or combination of impairments which meets or equals one of the

8  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant

9  work; but (5) could perform a significant number of jobs in the national economy.  AR 16-20.

10   Here, Plaintiff argues that the ALJ (1) erred in evaluating her credibility; (2) improperly

11  analyzed the medical evidence; (3) improperly rejected the testimony of her father, Kenneth

12  Narmore; (4) erred in failing to consider the functional limitations caused by her obesity and

13  asthma; and (5) erred at step five.

14                               **DISCUSSION**

15  A.    Plaintiff's Credibility

16   Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for

17  rejecting her testimony.

18   In Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

19  pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

20  subjective complaints:

21       An ALJ is not "required to believe every allegation of disabling pain" or other
        non-exertional impairment.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989).
22       However, to discredit a claimant's testimony when a medical impairment has been
        established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  Morgan,
23       169 F.3d at 599 (quoting Lester, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
        the [claimant's] testimony is unpersuasive."  Id.  Where, as here, the ALJ did not find
24       "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
        claimant's testimony must be clear and convincing."  Id.
25
26       Social Security Administration rulings specify the proper bases for rejection of a
        claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
27       supported by reasons that do not comport with the agency's rules.  See 67 Fed.Reg. at
        57860 ("Although Social Security Rulings do not have the same force and effect as the
28       statute or regulations, they are binding on all components of the Social Security
        Administration, ... and are to be relied upon as precedents in adjudicating cases."); see

1  *Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
   step three of the disability determination was contrary to agency regulations and rulings
2  and therefore warranted remand).  Factors that an ALJ may consider in weighing a
   claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
3  between testimony and conduct, daily activities, and "unexplained, or inadequately
   explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair,*
4  885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

5      The ALJ first explained that Plaintiff's description of her daily activities was not

6  consistent with her alleged level of disability.  AR 17-18.  For example, the ALJ noted that in her

7  June 2006 function report, Plaintiff stated that she took her children to and from school, and fed,

8  clothed and bathed them.  AR 17, 99-100.  She stated that she cleans the house, does laundry and

9  shops once or twice a week.  AR 100-101.  The ALJ concluded that Plaintiff could read, watch

10 television, do some housework and drive a car.  She could also care for her young children at

11 home, "without any particular assistance."  AR 17.  Finally, the ALJ found that despite Plaintiff's

12 claims that she did not socialize, she has a boyfriend who was preparing to move in and is able to

13 socialize with her parents.

14      An ALJ is entitled to review a claimant's daily activities in making a credibility

15 determination.  *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005).  Here, however, the ALJ

16 mischaracterizes the record in two ways.  First, the ALJ makes a specific finding that Plaintiff

17 cares for her children "without any particular assistance," though Plaintiff testified that her

18 boyfriend helps her most days and that her parents also help her three or four times a week.  AR

19 34.  She also stated that she sometimes has to have someone come pick up her children when she

20 gets stressed out.  AR 27.  The ALJ's statement, then, is simply incorrect.

21      Second, the ALJ incorrectly finds that the ability to have a live-in boyfriend and interact

22 with ones' parents negates Plaintiff's testimony that she does not socialize.  Plaintiff testified that

23 she does not leave her house unless she has to, cannot leave her house during a panic attack and

24 does not have friends or socialize.  AR 26.  Plaintiff's ability to interact with her boyfriend and

25 her parents in her own private space does not negate this testimony.  Moreover, Plaintiff testified

26 that she met her boyfriend because he works for her father, rather than through socializing

27 outside of her home.  AR 26.

28

The remaining daily activities cited by the ALJ, i.e., Plaintiff's ability to read, watch television, do some housework and drive a car, are not sufficient to undermine Plaintiff's testimony.  *See Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

Next, the ALJ states that Plaintiff's "generally unpersuasive appearance, presentation and demeanor while testifying at the hearing" influenced the credibility analysis.  AR 18.  An ALJ's personal observations may be used only in "the overall evaluation of the credibility of the individual's statements" and may not form the sole basis for discrediting a claimant's testimony.  SSR 96-7p; *Orn*, 495 F.3d at 640-641.  Here, the ALJ noted that this was not the sole reason for discrediting Plaintiff's credibility.

Finally, the ALJ cited various medical records in rejecting Plaintiff's testimony.  The ALJ first cites a medical record dated January 9, 2008, which assigned a Global Assessment of Functioning (GAF) score of 75.  The ALJ notes that this score indicates no more than a slight impairment in social, occupational, or school functioning.  AR 18.  Elsewhere in the opinion, the ALJ cites the State Agency physicians' finding that Plaintiff's mental impairments were not severe, as well as Dr. Azevedo's finding that Plaintiff may have been malingering.  AR 19.  The ALJ may discredit a claimant's testimony because it is not supported by the medical record, so long as it is not the sole reason for doing so.  *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)).

Although the ALJ incorrectly concluded that Plaintiff took care of her children without much assistance and discredited her testimony based on her interactions with her boyfriend and parents, any error was harmless.  Notwithstanding these errors, the ALJ's citation to the discrepancies in the objective evidence, the possibility that Plaintiff was exaggerating her symptoms and the ALJ's own observations at the hearing constitute substantial evidence to support the credibility determination.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.2008) (Such "[c]ontradiction with the medical record is a sufficient basis" for rejecting subjective testimony); *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

B.    Medical Evidence

Plaintiff next argues that the ALJ erred in rejecting the diagnoses and opinions set forth by Dr. Halappa and Dr. Azevedo.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52.

   *Dr. Halappa*[2]

   Dr. Halappa diagnosed Plaintiff with bipolar disorder, panic attacks, depression and post-traumatic stress disorder.  She opined that Plaintiff was significantly limited in almost all areas of mental functioning and believed that Plaintiff could not perform any full-time work.  AR 195-200.   The ALJ set forth these findings in detail but gave her opinions little weight.  AR 18.  The ALJ determined that the severity of her findings was not supported by the medical records and was not consistent with other substantial evidence in the record.  AR 18.  Indeed, Dr. Halappa's restrictions were severe and contradicted by Dr. Azevedo and the State Agency physicians.  AR 19.

   Immediately after discussing Dr. Halappa's opinion, the ALJ set out the opinions of the State Agency physician and Dr. Azevedo.  AR 19.  Dr. Aquino-Caro believed that Plaintiff's mental impairments were not severe.  AR 19.  Dr. Azevedo, who examined Plaintiff, concluded that Plaintiff would have some limitations, but retained work-related abilities.  AR 19.  The ALJ was therefore correct in stating that Dr. Halappa's opinion that Plaintiff could not perform *any* work was contrary to all other opinions in the record.

   As to the ALJ's conclusion that Dr. Halappa's opinions were not supported by the medical records, this too is a correct statement.  Although the medical record demonstrates that Plaintiff does have a mental impairment that causes limitations, as the ALJ concluded, it does not support a finding that Plaintiff is totally incapacitated.  For example, there is evidence in the

---

   [2] Plaintiff characterizes Dr. Halappa as a treating source and Defendant does not disagree.  The Court notes, however, that there appears to be only one examination performed by Dr. Halappa.  AR 176.  Indeed, Dr. Halappa lists this visit, dated April 18, 2008, as the first and last time she saw Plaintiff on the May 2008 assessments.  AR 195.

record that Plaintiff's symptoms improved with medications.  In November 2006, Plaintiff reported that she was doing better at home and in public.  AR 166.  In November 2007, Plaintiff reported that she was feeling well.  AR 188.  In April 2008, less than one month before Dr. Halappa offered her opinions, Plaintiff stated that her new medication was helping.  AR 176.

Moreover, Dr. Azevedo noted that Plaintiff's symptom endorsements during the interview were "dramatic in nature," which may reflect a cry for help or "possible extreme symptomology reporting."  AR 148.  Similarly, Dr. Halappa's opinions were based, in large part, on Plaintiff's reports of symptoms.  AR 196-198.  An ALJ may also reject a treating physician's opinion because it was based on the claimant's discredited subjective complaints.  *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen,* 885 F.2d 597, 605 (9th 1989).

Plaintiff argues that Dr. Halappa's opinion was supported by the medical record, but cites only her diagnoses as support.  Although Plaintiff may disagree with the ALJ's conclusion, this Court must uphold the decision when it is supported by substantial evidence in the record.  Here, the ALJ set forth specific and legitimate reasons, supported by substantial evidence, to reject Dr. Halappa's opinions.  *Orn,* 495 F.3d at 632-633.

Insofar as Plaintiff takes issue with the ALJ's attempt to explain the discrepancies, the Court agrees that the ALJ should refrain from speculation.  The ALJ suggested that perhaps Dr. Halappa was influenced by "sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material by the patient."  AR 19.  This statement, while unsupported by the record, is nothing more than an attempt to explain the drastic differences in opinions.

*Dr. Azevedo*

Plaintiff next argues that the ALJ erred in rejecting certain aspects of Dr. Azevedo's opinion without explanation.  Specifically, she argues that the ALJ improperly rejected Dr. Azevedo's anxiety diagnosis, as well as his opinion that Plaintiff's judgment may be inconsistent and that she may have a reduced ability to manage work-related pressures.

Contrary to Plaintiff's argument, the ALJ's rejection of the anxiety disorder diagnosis did not result in a faulty step two finding.  Plaintiff makes a similar argument with respect to Dr.

Halappa's diagnoses, stating that the rejection "colored" the ALJ's view of the case. The step two finding has always been a threshold finding that allows an ALJ to deny benefits to applicants with impairments of such minimal nature that they could never prevent a person from working. SSR 85-28. It is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If an ALJ finds an impairment severe at step two, the ALJ must then go further with the sequential evaluation and consider *all* limitations.

Here, the ALJ found that Plaintiff had a severe impairment and she therefore had to consider the functional effect of all impairments, both severe and non-severe, in the remaining analysis. SSR 96-8p. The step two finding therefore made no practical difference. The Court will not find error at step two, where the ALJ continued on with the sequential evaluation, based simply on Plaintiff's speculation that the ALJ's view was "colored" by finding certain impairments non-severe. Reply, at 8.

As to the ALJ's treatment of Dr. Azevedo's opinion, a comparison of the RFC and Dr. Azevedo's suggested limitations shows that the RFC adopts many of his findings. The ALJ limited Plaintiff to simple, repetitive tasks with no public contact and limited contact with others. This is consistent with Dr. Azevedo's finding that Plaintiff could perform one and two step instructions of mild to moderate levels of complexity, could make judgments on simple work-related decisions, and had mild limitations in her ability to maintain concentration, persistence and pace throughout a workday and/or workweek. AR 148-149.

Indeed, the ALJ explained that she gave "some weight" to Dr. Azevedo's opinions, but noted that the remaining opinions were not consistent with the record as a whole and were too restrictive. As an initial matter, it does not appear that Dr. Azevedo's belief that Plaintiff's judgment "may" be inconsistent and that she "may" have a reduced ability to manage work-related pressures differ significantly from his other limitations adopted by the ALJ. Nevertheless, Nonetheless, his own examination makes more substantial limitations questionable. He noted that a test score was "suggestive of malingered psychopathology" and called Plaintiff "dramatic." Moreover, his mental status examination was relatively benign. AR 146. Although her mood was mostly anxious and she exhibited some restlessness throughout the examination, her eye

contact was good, her affect was consistent to thought content with a full range of emotional expression, she was alert and oriented to time, place, person and situation, her speech was rapid but not significantly impaired and there were no signs of any formal thought disorder.  Her insight and judgment "appeared to be somewhat limited" and her concentration levels were "mildly impaired," and these findings were taken into account by the ALJ's RFC.  AR 146.

The ALJ's treatment of Dr. Azevedo's opinion was therefore supported by substantial evidence.

*State Agency Opinions*

Plaintiff contends that the ALJ erroneously relied on the State Agency physician's finding that her mental impairment was not severe.  As explained above, however, the ALJ relied mainly on Dr. Azevedo's opinion in forming the RFC after finding that Plaintiff's depression was a severe impairment.  Although the ALJ may have relied in part on the State Agency physician to question Dr. Halappa's severe limitations, it was not the sole source of the RFC finding.

C.    Lay Witness Opinion

Plaintiff next argues that the ALJ failed to provide specific, germane reasons for rejecting the testimony of her father, Kenneth Narmore.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e).  Such testimony is competent evidence and " cannot be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).  If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  *Id.*  Further, the reasons "germane to each witness" must be specific.  *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

In a Third-Party Function Report dated June 19, 2006, Mr. Narmore stated that Plaintiff gets her sons ready for school, takes them to school, cleans her house, cooks and does laundry.  She is able to care for herself, drive, and go out alone.  She is also able to shop in stores, pay bills, count change and handle a savings account.  Plaintiff watches television and reads every

day, visits her parents six days a week and goes to church once a week.  Plaintiff has no problems

getting along with family, friends or neighbors, though she does not get along very well with

authority figures.  She has never been fired from a job because of problems getting along with

other people.  Mr. Narmore believed that Plaintiff was good at following written instructions and

fair at following spoken instructions.  She is able to finish what she starts.  Plaintiff's mother

helps her care for the children.  She is depressed and her sleep is affected by uncontrolled crying.

She does not handle stress very well.  AR 107-114.

The ALJ noted Mr. Narmore's testimony and concluded that his opinions, as well as

those of Plaintiff, were not credible "in light of discrepancies between the claimant's assertions

and information contained in the documentary reports and the reports of the treating and

examining practitioners."  AR 17-18.  These reasons were germane to Mr. Narmore's testimony

and as explained throughout this order, were supported by substantial evidence in the record.

Plaintiff argues that the ALJ failed to provide specific reasons to reject Mr. Narmore's

statements that Plaintiff's mother helps her with the children, that her sleep is affected by

uncontrolled crying and that she does not handle stress very well.  The ALJ was not required,

however, to go through each of Mr. Narmore's statements and explain why she did not find them

credible.  It is enough under Ninth Circuit law to provided germane reasons specific to the lay

witness.

In any event, Mr. Narmore's statements that Plaintiff received help from her mother in

caring for her children, that her sleep was affected by uncontrolled crying and that she did not

handle stress "very well," are not necessarily inconsistent with Plaintiff's RFC for simple,

repetitive tasks with little contact with other people.  In fact, Mr. Narmore's remaining

description of Plaintiff's abilities suggest that she is quite functional.

The ALJ did not err in her treatment of Mr. Narmore's testimony.

D.  <u>Physical Impairments</u>

Plaintiff argues that the ALJ failed to consider the impact of her asthma and obesity on

her RFC.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  SSR 96-8p.

As to Plaintiff's asthma, she indicated that it was under control during the consultive physical examination and testified that it was "okay" since she didn't do much.  AR 32-33, 142.  There is no evidence in the record that her asthma caused any limitations.

Similarly, Plaintiff did not testify as to any limitations related to her obesity.  In fact, when asked at the hearing if there were any physical problems, other than her previously discussed asthma, that would keep her from working, Plaintiff responded, "No."  AR 33.  Plaintiff was represented at the hearing and did not raise obesity as an issue.  *See* Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).  Similarly, there is no evidence in the record that Plaintiff's obesity caused any limitations.  Although there are notations in the record of neck and back pain, there are no complaints of physical limitations.  Consultive examiner Dr. Madireddi diagnosed Plaintiff with obesity, yet did not find *any* physical limitations.  AR 142-143.  *See eg.,* Burch, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Therefore, the ALJ did not err by excluding Plaintiff's asthma and obesity from the RFC discussion.

E.      Step Five Determination

Finally, Plaintiff contends that the ALJ failed to meet her burden of showing at step five by presenting an inaccurate hypothetical to the VE.

1      "Hypothetical questions posed to the vocational expert must set out all the limitations and

2 restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

3 The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."

4 *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).

5      Here, the Court has determined that the ALJ correctly analyzed the subjective testimony

6 as well as the medical opinion evidence.  The hypothetical question corresponding to the ultimate

7 RFC finding was therefore proper.  An ALJ is only required to present the VE with those

8 limitations he finds to be credible and supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d

9 1157, 1165-66 (9th Cir. 2001).

10      To the extent that Plaintiff contends that the identified positions were beyond her RFC for

11 simple, repetitive tasks, her argument fails.  As thoroughly explained in *Meissl v. Barnhart*, 403

12 F.Supp.2d 981, 983 (C.D.Cal.2005), "[w]hile reasoning level two notes the worker must be able

13 to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by

14 labeling them as being 'uninvolved.'" A reasoning level of 2, then, does not conflict with a

15 limitation to simple, repetitive tasks.  *Id.* at 984-985.

16      The ALJ's step five finding was supported by substantial evidence and free of legal error.

17      **RECOMMENDATION**

18      Based on the foregoing, the Court finds that the ALJ's decision is supported by

19 substantial evidence and based on proper legal standards.  Accordingly, the Court

20 RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

21 Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue

22 and against Plaintiff Rena Faye Perez.

23      This Findings and Recommendation will be submitted to the Honorable Anthony W. Ishii

24 pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being

25 served with this Findings and Recommendation, the parties may file written objections with the

26 court.  The document should be captioned "Objections to Magistrate Judge's Findings

27

28

and Recommendation."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 2, 2011**                              **/s/ Dennis L. Beck**
                                                     UNITED STATES MAGISTRATE JUDGE